1

2              IN THE UNITED STATES DISTRICT COURT

3           FOR THE WESTERN DISTRICT OF WASHINGTON

4                        SEATTLE DIVISION

5

6   BENJAMIN JOSEPH LIGERI,        )
                                   )
7          Plaintiff,              )
                                   )
8              v.                  )        Civil Action No. 2:25-cv-00764-JHC_____
                                   )
9   AMAZON.COM SERVICES LLC,       )
    AMAZON PAYMENTS, INC.,         )
10                                 )
           Defendants.             )
11

12

13       **PLAINTIFF'S LCR 7(g) SURREPLY AND MOTION TO
         STRIKE PORTIONS OF DEFENDANTS' REPLY IN
14              SUPPORT OF CONSOLIDATION**

15                    **I.  INTRODUCTION**

16
    Plaintiff files this surreply under LCR 7(g) to respond to Defendants' ad hominem
17
    attack regarding Plaintiff's alleged use of research tools and to correct the record
18
    regarding the legal authorities cited in Plaintiff's opposition, and to clarify in the
19
    simplest legal terms terms why the Motion to Consolidate should be denied.
20

21  Defendants devote a substantial portion of their reply brief not to the legal merits

22  of consolidation, but to character attacks rooted in the speculative claim that

23  Plaintiff's brief was "ChatGPT-generated." In 2025, every major corporation—

    including Defendant Amazon—relies heavily on AI and automated systems for
24
    mission-critical decisions, legal risk modeling, product recommendations, and
25
    policy enforcement.
26

27

28

Singling out a pro se litigant for using research automation in a system engineered around hypertechnicality is not only absurd—it is corporate hypocrisy in its finest form. Amazon is one of the largest commercial exploiters of AI on the planet. Yet its counsel now invokes technological literacy as a basis for credibility smears, resorting to techno-class elitism rather than addressing the facts or legal standards before the Court.

Counsel's approach is not legal argument—it is a familiar character assassination tactic meant to discredit opposition rather than engage with substance. The Court should view this maneuver as what it is: an attempt to deflect from the systemic litigation abuse underpinning Amazon's conduct across all pending actions. Amazon's litigation abuse is analogous to its abuse of businesses all over the world which has led to mass suicide. Amazon operates like a tyrannical empire and mocks a good majority of all the laws of the United States designed to protect commerce.

If it weren't for AI and its obscenely poor decision-making skills, we may not even be in this courtroom—presuming, of course, that all of the laws Amazon is breaking, the trademarks they are stealing from the Plaintiff, and all the torts against the Plaintiff that have and are costing the Plaintiff tens of millions of dollars, are the mistake of artificial intelligence in a mass dragnet of account actions that they would never do with actual oversight. It's either that AI accident outlined or intentional, not sure what position the Defendants plan to take yet.

## II. PLAINTIFF'S CASE CITATIONS (DEFENDED)

### 1) Johnson v. Celotex, 899 F.2d 1281 (2d Cir. 1990)

Defendants argue that Plaintiff misquoted *Johnson v. Celotex*, 899 F.2d 1281 (2d Cir. 1990), by using the phrase "individual issues predominate." Plaintiff concedes the phrase was a paraphrase, not a

verbatim quote—but the paraphrase was legally accurate and sourced to the correct page. At 1285, the court held that "[c]onsiderations of convenience and economy must yield to a paramount concern for a fair and impartial trial." That exact reasoning supports Plaintiff's argument here: the proposed consolidation would undermine a fair trial by collapsing distinct facts, laws, and procedural frameworks. Defendants' fixation on formatting ignores the governing legal standard and mischaracterizes the citation's purpose. *Celotex* remains controlling authority for the proposition that judicial efficiency cannot override due process.

**2) In re Repetitive Stress Injury Litig., 11 F.3d 368 (2d Cir. 1993)**

Plaintiff stands by the citation to *In re Repetitive Stress Injury Litig.*, 11 F.3d 368 (2d Cir. 1993), which was cited to illustrate that consolidation is not automatic merely because some factual commonality exists. While the phrase "distinct legal theories" was paraphrased—not directly quoted—the underlying legal principle is sound. At page 373, the Second Circuit held that the consolidation of RSI claims—despite some thematic and factual overlap—was improper because the cases shared only "a claim of injury of such generality" and were "governed by the laws of different states" with differing defendants and factual profiles. The court emphasized that forcing all counsel into merged proceedings had "no basis in Rule 42," given the diverse legal burdens and factual predicates involved. That aligns directly with Plaintiff's position here: that Amazon's attempt to pre-consolidate three substantively distinct lawsuits—spanning RICO, equity claw backs, and IP fraud—fails the same standard. Plaintiff's citation was not intended as a direct quotation, and it's telling that the Defendants treat a paraphrase of well-settled doctrine as a more serious offense than their procedural forum shopping. *RSI Litig.* remains controlling Second

Circuit precedent rejecting boilerplate consolidation across divergent fact/legal tracks.

## III.    DEFENDANTS' CASE CITATIONS (ATTACKED)

### 1)    Mira v. Microsoft Corp., 2025 WL 474691

Defendants cite Mira v. Microsoft Corp., 2025 WL 474691 (W.D. Wash. Feb. 12, 2025), as if it offers support for consolidation in this case. It does not. In fact, the only thing Mira proves is that Defendants either didn't read it—or hoped the Court wouldn't. In Mira, the plaintiff filed two functionally identical lawsuits under slightly different names. Both involved the same individual, suing the same employers, over the same employment relationship, same factual timeline, same witnesses, and same statutory claims. Plaintiff did not oppose consolidation. The Court simply acknowledged that "there is no dispute that it is the same individual," and found that merging the cases would avoid redundant discovery and "inconsistent results." That's not precedent for consolidation—it's inevitable when two indistinguishable cases are filed by the same person under different names.

### 2)    Perez-Funez v. District Director, INS, 611 F. Supp. 990 (C.D. Cal. 1984)

Defendants also cite *Perez-Funez v. District Director, INS*, 611 F. Supp. 990 (C.D. Cal. 1984), a case that has absolutely nothing to do with commercial litigation, Rule 42(a) consolidation of business disputes, or any issue remotely analogous to the one before this Court.

*Perez-Funez* involved the detention of **unaccompanied minors by immigration authorities** and a constitutional challenge to **coercive INS practices** used to extract "voluntary departure" waivers from children.

The court allowed several juvenile habeas petitions and injunctive actions to be consolidated for the limited purpose of obtaining class wide relief under constitutional due process principles.

Citing *Perez-Funez* here is not just inapposite—it's surreal. It's the legal equivalent of citing Brown v. Board of Education to justify merging three unrelated product liability trials. That Defendants would reach back forty years to a case involving immigrant children in federal custody to argue for the consolidation of RICO, equity, and fraud claims involving the conduct of multiple fraudulent sub entities of a 2 trillion dollar cartel is, frankly, embarrassing. It seems DWT is the one relying on ChatGPT to abusively push their anti-litigation strategies.

## IV. CONCLUSION

Rule 42(a) permits consolidation only where actions involve a "common question of law or fact." Courts emphasize that "common" does not mean tangentially related or arising from a similar adversary background story. It means shared legal frameworks, overlapping factual predicates, and materially identical discovery burdens. That standard is not met here.

The three actions may stem from a broader commercial conflict with the Defendants' enterprises, but they assert legally distinct causes with different scopes, timeframes, and remedies:

• RICO Action (Case No. 2:25-cv-00764-SKV): Alleges an enterprise-wide criminal conspiracy under 18 U.S.C. § 1962(c), focused on predicate acts of wire fraud, bank fraud, and systemic economic sabotage. The complaint seeks *treble damages*, restitution, declaratory relief, and attorney's fees under § 1964(c). It asserts injuries exceeding $250,000 and long-term commercial losses reaching into *tens of millions of dollars*.

• Melbourne Action (Case No. 2:25-cv-00796-JHC): Alleges *fraud, conversion, and misrepresentation* related to the seizure of inventory and unauthorized debits from Melbourne Retail LLC, during arbitration which Plaintiff was not a part of since he was not a seller on Amazon's platform but an owner of a business that was a beneficiary of the sales of a seller on Amazon named Colby Ross. It arises from a *narrower contractual enforcement dispute* following an arbitration award. It does not invoke RICO or Equity but basic commercial conduct.

• **Equity Action (Case No. 2:25-cv-00860-JNW):** Seeks **$40 billion in equitable relief** based on Amazon's long-running internal scheme to obstruct, delay, and ultimately destroy Plaintiff's business while retaining its assets. The complaint alleges that Amazon, acting through various fraudulent internal enforcement and policy arms, exploited its dominant platform position to dismantle a high-performing seller account and reroute its economic value to others under the false pretense of compliance violations. The theory of liability rests on Amazon's abuse of internal discretion and bad-faith pretextual conduct—not statutory fraud or RICO violations. Unlike the other actions, this case does not plead damages under a traditional tort framework. It asserts that Plaintiff's business was grown in good faith over a decade and then systematically sabotaged through internal obstruction, inventory freezes, and retaliatory account shutdowns. The relief sought is equitable and restitution-based—return of the business value siphoned off through these actions. The claims are grounded in Amazon's internal sabotage and self-dealing, not in predicate crimes or isolated transactional fraud, and thus stand apart from both the RICO and Melbourne complaints.

These cases diverge not just in legal theory but also in required evidence, procedural posture, parties, and relief sought. No single trial or discovery plan could fairly accommodate the enterprise evidence needed in the RICO case, the account-specific arbitrated facts in the Melbourne case, and the broader equitable declarations in the *Equity* case.

Defendants' argument—anchored in superficial overlap and strategic but non-binding invocation of their Business Solutions Agreement—is insufficient to override Rule 42(a)'s constraints. "Common question" must be more than a thematic link. Courts reject consolidation where it would blur distinct theories, confuse the factfinder, or prejudice party rights.

Consolidation here would do all three. It would obscure the RICO-specific burdens with transactional evidence from a commercial theft. It would dilute the equitable demands of the third case with damage claims from the others. It would force Plaintiff to litigate conflicting defenses simultaneously while granting Amazon unjust narrative compression.

The Court should deny consolidation. Rule 42(a) is not a tool of administrative efficiency where legal distinctions are materially significant. Parallel themes are not "common questions of law or fact." The integrity of each cause of action requires separate adjudication.

Respectfully submitted,

/s/ Benjamin J. Ligeri
3120 Corey Rd
Malabar, FL 32950
(321) 831-2595
benligeri@gmail.com
Date: July 9, 2025

# CERTIFICATE OF SERVICE

Plaintiff hereby certifies that the Plaintiff's LCR 7(g) Surreply and Motion to Strike filed in this matter was served on counsel for Defendants via email at:

Caesar Kalinowski IV
Davis Wright Tremaine LLP
caesarkalinowski@dwt.com

I certify under penalty of perjury that the foregoing is true and correct.

1  Dated: July 09, 2025

2  /s/ Benjamin Joseph Ligeri
   Benjamin Joseph Ligeri

3

4  Respectfully submitted,

5  /s/ Benjamin J. Ligeri
   3120 Corey Rd

6  Malabar, FL 32950
   (321) 831-2595

7  benligeri@gmail.com

8  Date: July 9, 2025

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28